McKinney, J.
delivered the opinion of the' court.
The tract of land in controversy in this action, was granted by the State of Tennessee to the heirs of Henry Haws Story, in consideration of military services rendered by Jiim to the State of North Carolina during the revolutionary war, by grant bearing date the 28th day of August, 1822, for 640 acres.— Henry Haws Story died without issue, many years before the issuance of said grant, leaving several brothers and sisters surviving. Sarah T. Saunders, one of the lessors of the plaintiff, is the daughter of William Story, who was the brother of said Henry H. Story; and the defendants to the.action, now plaintiffs in error, are the children and heirs at law of Edward' Story, son of James Story, who was also a brother of said Henry H. Story. About the year 1830, said Edward Story removed with his family to Madison county, in which said land is situate, and settled thereon; and remained in possession of the same until his death, which happened in the year 1839, and after his death the possession was continued by the plaintiffs in error up to the institution of this suit, which was on the 11th day of April, 1842. On the trial in the circuit court, verdict and judgment were rendered in favor of the lessors of the plaintiff, to reverse which the defendants prosecute an appeal in error to this court. The errors assigned and relied upon, are assumed to be in the charge. of his Honor, the circuit judge, to the jury; and in the admission and rejection of evidence in the progress of the trial in the court below.
1. The defendants offered Gabriel Davie as a witness on the trial of the case, and proposed to examine him; and his competency being objected to, he was sworn on the voir dire, and stated, that he had purchased 120 acres of the land in controversy in this action, and was in possession of part thereof; but whether the purchase was before or after the institution of this suit, he did not know; whereupon the court held that he was *665 incompetent and refused to admit his testimony. In this, it is alledged, the court erred. We do not think so. Prima facie, from his own showing, he was interested in the event of this suit, and liable to be evicted in case of a recovery by the lessors of the plaintiff. It was incumbent upon the defendants, if they desired to avail themselves of this evidence, to satisfy the court that his competency, as a witness, was free from all legal exception; and if this were left*doubtful, his exclusion would constitute no ground of reversal in this court.
2. The defendants offered to prove, by parol evidence, that the tract of land in question in this action, had been sold for taxes due theron, that the order of sale and sheriff’s return on the same were not to be found; and that Edward Story, the father of defendants; had redeemed said tract of land from the purchaser' at the tax sale in the year 1830. All which, being objected to, the court refused to admit. In this we think there was no error. We express no opinion at present upon the question, whether or not the loss of records, deeds, or other written instruments, constituting the evidence of title to real property, may be supplied by parol evidence on the tidal of an action of ejectment in a court of law. It is sufficient to sustain the decision of the circuit court upon this point of the case, that the facts proposed to be proved, could have been of no avail to the defendants. It does not appear, from anything in the record, that a sheriff’s deed, in pursuance of the alleged sale, was ever executed to the purchaser; neither does it appear that any transfer of the supposed interest of the purchaser at the tax sale was made to said Story. Admitting the facts, therefore, to be as proposed to be proved, no title whatever to the land in dispute was communicated either to the purchaser or to Edward Story, which could have furnished any ground of defence to the action, or interposed any legal obstacle to the recovery sought by the lessors of the plaintiff.— *666 The evidence was irrelevant, and therefore, was properly rejected.
3. The defendants offered to prove that Mary Hagan, a witness for the lessors of the plaintiff, had stated, before giving her deposition, that she had an uncle by the name of Henry Haws Story, but the court refused to admit the evidence.' It appears from the evidence in the record that said Mary Hagan is the daughter of James Story, above mentioned. Her deposition had been taken by both parties in this suit — first by the lessors of the plaintiff, and afterwards by the defendants. In her first deposition she stated that her father had but one brother whose name was George Story. In her last deposition she stated that she had understood from her family relations that she had an uncle named Henry Haws Story. The deposition of said witness having been taken by both parties, she was made equally the witness of both, and therefore it was not competent to either party to impeach her credibility. But again, had the witness stood in such relation to the defendants as would have entitled them to assail her credit, by proof of previous contradictory statements, such evidence would have been inadmissible, unless an opportunity of explanation had first been afforded her, which was not done in this case. And if, as suggested by one of the counsel of the defendants, the object of the evidence was to corroborate the statement of the witness contained in her ■ last deposition it was inadmissible for such purpose. In 1 Starkie’s Evidence 30, it is said: “It seems to be the better opinion that a witness cannot be confirmed by proof that he has given the same account before, even although it has been proved that he has given a different account, in order to impeach his veracity; for his mere declaration of the fact is not evidence.” And although, Under special circumstances, exceptions to this rule have been admitted, the case under consideration does not form one. There is no error, therefore, in any aspect of this point.
*667 4. The court refused to admit the deposition of Richard Munford. In this it is said the court erred. The only part of this deposition which could have been admitted as evidence to the jury, at any stage of the trial, is the statement that the witness — who is a family connexion — had always understood in the family that Henry Haws Story died in the revolutionary army. This would have been admissible evidence, if offered in proper time, if no other objection existed to the deposition. But the bill of exceptions shows that the deposition was not offered until after the lessors of the plaintiff had closed their rebutting evidence, and being evidence in chief, the defendants were not entitled to insist upon its being received after closing their examination in chief. Again, the bill of excptions does not inform us for what reason the deposition was refused. It is not accompanied by any commission or notice, nor is it shown to have been regularly taken. It may have been properly rejected for some irregularity; and, as the contrary does not appear from the record, we must presume that such was the fact.
5. The court, in reference to the statute of limitation, instructed the jury as follows, viz: “If you shall be of opinion that Edward Story was one of the heirs of Henry Haws Story, he shall be held to have entered under an assurance of title within the meaning of the statute. But if after taking possession, or at the time, he set up an exclusive right to the land in question, or such a right or claim as excluded the right of the plaintiffs, or did other acts amounting to an ouster of the plaintiff, holding a continued possession for the period of seven years, then the plaintiffs right of action would be barred, and they would not be entitled to recover any portion of the land in this action. If the jury should be of opinion that Edward Story was not one of the heirs of Henry H. Story, then the statute of limitations will only pro *668 tect the defendants in so much as shall have been actually enclosed, or in use and occupation for the period of seven years; which, as in the other case, must' have been a continued adverse possession before suit brought.” It is insisted, that his honor erred in instructing the jury, that the' possession, necessary, to operate as a bar under the act of 1819, must be adverse; and it is earnestly contended that the mere fact of Edward Story having held possession of the land for the term of seven years — without regard to the nature or character of such possession — operated to vest him with an absolute and indefeasible title thereto, and to bar the rights of the defendants in error. The construction of the act of 1819, can scarcely at this day, be regarded as open to discussion, but admitting for the present, that it is, the construction contended for by the counsel of the plaintiffs in error, cannot in our opinion, be maintained, especially in a case like the present. If, as is now conceded, Edward Story was tenant in common with the defendants in error, unless his possession was adverse to them, they could not have maintained an action of ejectment against him. The law is, that one tenant in common cannot maintain this action against his co-tenant without actual ouster. 7 Cranch Rep. 457; 5 Mass. Rep. 351; 2 Taunt. Rep. 397. Tenants in common are jointly seized of the entire estate, each one has an equal right of entry and possession, and the possession of one is regarded as the possession of all, until a disseisin of the others by actual ouster. Adams on Eject. 54. And nothing but actual ouster by a tenant in common can give him the exclusive possession. 5 Burr Rep. 2604. But according to the construction of the statute insisted upon, a permissive possession, not inconsistent with the' title of the* defendants in error; and of such a character as would not entitle them to maintain an action of ejectment against the tenant in possession, would have the *669 effect of barring their right. It is true, as argued, that the statute of 1819, does not, in express terms, declare that the possession required to create the bar, shall be adverse, nor is the term adverse possession so common in. the books to be found in any statute of limitation, to which we have had access, but from the reason and policy of the statute, as well as from the Obvious import of the language employed, it must necessarily be implied that the possession, shall be of this character. It would be absurd to maintain that a permissive possession should be held to ripen into title, or bar the right of the legal owner. It has been uniformly held by the courts of England, in the construction of the statute, 21 James 1 — which is very similar in its provisions to the 2d section of the act of 1819 — as well as the courts of this country, that in “order to create a bar, there must be an actual and exclusive occupation of the land, accompanied by such circumstances as clearly indicate that the possessor is holding and claiming for himself and in opposition to the rights of all other persons. And. although it is true, as argued, that the act of 1819, in some of its provisions, is wholly different from the statute, 21 James 1, and the statutes of limitation of most of the states of this Union, yet in respect to the character of possession required, we are not aware that any difference exists. The act of 1819, requires that the party seeking to avail himself of its benefit shall have had seven years possession, holding or claiming the land under a deed,' devise, grant or other assurance of title, purporting to convey an estate in'fee simple, without claim, by suit in law or equity effectually prosecuted within the period aforesaid. By the proper force and meaning of this language, it must be understood, that the party was holding in his own right, and for his own exclusive benefit, and adversely to all others. It admits of no other rational construction; a contrary construction would make the statute unmeaning and inoperative. If the possession is con *670 sistent with, or subordinate to the title of another, there can be no conflict of title, or controversy as to the right of possession. The party in possession would not require the aid of the statute either to perfect his title or protect his possession. We adopt the language of Ch. J. Marshall in the case Kirk et. als. vs. Smith, (9 Wheat Rep. 241, 288.) In speaking of the character of possession necessary to give title by acts of limitation, generally, as held by the courts of England, as well as all others where similar laws exist, he says “that possession to give title must be adversary. The word is not indeed, to be found in the statutes; but the plainest dictates of common justice require that it should be implied. It would shock that sense of right which must be felt equally by legislators and by judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title. To allow such a construction, would be to make the statute of limitations a statute for the encouragement of fraud, a statute to enable one man to steal the title of another by professing to hold under it. No laws admit of such construction.” The argument, that tenants in common are not within any exception of the statute, and are therefore, subject to be barred, if it proved anything, would prove entirely too much, for as suggested during the progress of the argument, landlords, mortgagors, reversioners, and others that might be mentioned, are not within any of the exceptions. Yet, according to the construction sought to be given the statute, they, too, would be barred. It requires no argument to show that such a construction of the statute cannot be adopted. We are of opinion, therefore, that there is no error in the charge of the court upon this subject. The other errors-assigned were not seriously pressed, and need not be noticed.
The judgment of the circuit court will be affirmed.